We move to the third case this morning, Kellogg v. Ball State University. Thank you. All right, Mr. Cleveland. Morning, may it please the court. My name is Jason Cleveland. I represent the plaintiff, Cheryl Kellogg, who is seeking reversal of both the summary judgment order entered against her on her Title VII and Equal Pay Act claims. When the Academy hired Cheryl Kellogg in 2006, the executive director, David Williams, set her salary at $32,000, which was lower than males that were hired around the same time with similar credentials. When she asked why this amount was so low, Dr. Williams told her it was because she didn't need any more money because he knew her husband worked at Ball State. The district court erred when it ignored this statement, ruling that the statement was made outside the statute of limitations and therefore Kellogg could not rely upon it to establish her claims. This is a direct violation of the to preclude or limit an agreed person's right to introduce evidence of an unlawful hiring practice that has occurred outside the time for filing a charge of discrimination. This court has regarded the Ledbetter Act as removing the Ledbetter decision as an obstacle for applying the paycheck accrual rule, which it has applied to paycheck discrimination cases beyond simply Title VII cases. Kellogg's case is similar to Reese v. Ice Cream Specialties. In that case, an African-American employee learned over three years after the fact that his white co-workers had been given a raise and he had not. The raises were issued in February 2007, and Reese filed his EEOC charge in December of 2010. This court held that Reese could pursue his claims for pay discrimination with regard to the damages he had incurred starting with 300 days before the filing of his charge of discrimination. Like Reese, Kellogg's has evidence that her pay was established discriminatorily, and like Reese, that evidence was outside the time for filing. But like Reese, she continued to receive paychecks, including within the statute of limitations for filing. Mr. Cleveland, how should we read the court's opinion in Des Gupta, which seems to conflict a bit with Reese? Your Honor, this court has held repeatedly that the paycheck accrual rule applies to these types of cases. There's other case law besides Reese, including Roche, that talks about that whenever, and that applies to the Lilly Ledbetter Fair Pay Act as well. Even if the discriminatory decision occurred outside the statute of limitations, the plaintiff can rely upon that decision if she continued to receive paychecks, including within the time required. So Des Gupta seems to suggest otherwise. Are you saying that was wrongly decided, or there's a way to narrow it? How would we treat that? Well, I think that when it comes to the paycheck accrual rule that this court has repeatedly held, that each time that she's issued a paycheck, it's a fresh claim for discrimination. And that's held true in the Ledbetter Act as well. It's not a case of a continuing violation theory. The Ledbetter Act doesn't mention the Equal Pay Act, though. Excuse me, sir? The Ledbetter Act doesn't expressly mention the Equal Pay Act. No, it does not. That is true, Your Honor. But in Roche, this court has extended the paycheck accrual rule to claims such as 1983 claims, and opined that it would apply to disability discrimination claims as well. We think that our position in this, Your Honor, is that the paycheck accrual rule should apply to the EPA based on this court's precedents, implying the paycheck accrual to all forms of paycheck discrimination. We know that the Lilly Ledbetter Act applies to Title VII cases. So how are you seeking to use that here? You're not seeking to get damages back to 2004 when she was hired, correct? You're just seeking damages that are within the statute of limitations. Precisely, Your Honor. And she was actually hired in 2006. But you're absolutely right. We are only seeking damages within the relevant statute of limitations, relying upon the discriminatory pay decision that occurred prior to the statute of limitations. And in this case, Williams was the sole decision maker when it came to setting salaries. Unlike other cases that have been analyzed by this court, there was no rule or law or policy that determined how he set salaries. And unlike other cases that have been reviewed by this court, the Academy has not offered any contemporaneous evidence about why Williams set Kellogg's salary when he set it. All of that comes from these declarations that he offered in support of the appellant's motion for summary judgment that were prepared with the intent that Ms. Kellogg's actually received approximately a $5,000 raise over what she had been making when she started this job. For purposes of summary judgment, Your Honor, with regard to her evidence that Williams told her at the time that he wasn't going to pay her any more money than that because her husband worked, I think it's irrelevant what she made at the job at Burris for one semester while she was seeking a degree versus the wages that she earned in her career prior to that. That was simply a job she took for a semester while she was matriculating at Ball State. And based on her evidence of Williams' discriminatory comment that was issued at the time that he made the decision, that's up for the jury to decide. If they want to believe Williams' evidence and his statements that he relied on these other factors and he relied on her prior salary, then I think a jury could go with that. Or they could believe Kellogg's evidence as to what she testified Williams said at the time. And again, there's no contemporaneous evidence that the Academy has offered that he did base those salaries on a 5% increase from prior salary. That's all in his declarations that were created with the assistance of counsel specifically in defense of this suit. And this court has repeatedly held that remarks that support an inference of unlawful bias motivated the decision-maker when those remarks were made by the decision-maker around the time of and in reference to the adverse action complained of. I would put to the court that this is the exact type of situation that the EPA is meant to remedy. It's a proactive tool that was specifically designed to correct salaries based on the outmoded belief that women should be paid less than men. It's a systemic problem that we need to remedy the societal ill. And that's what lower starting salary because of her sex based on her evidence. In addition to that, she has comparator evidence that the district court refused to consider of other males that were hired at the same time as her who received a higher wage. Mr. Cleveland, during discovery in this case, were any interrogatories served on you asking you to disclose the comparators? Your Honor, the comparators were disclosed to the defendant in multitudes of ways. They were all listed. I will submit other than Kaver's. They were all listed on her witness list. They were responded to in discovery. All of these comparators... Were they, was there a question? I know typically in Title VII cases, there's an interrogatory that asks for identification of comparators. Was there such an interrogatory here? I don't believe so, Your Honor. And regardless, the point that we want to make is that it's whether they have notice of it, not specifically how they got it through an interrogatory. All of these comparators were listed on witness lists. They were disclosed to Kellogg through the discovery process. She specifically asked for these. And in fact, in response to her discovery request, she asked specifically for the names and employee files. And these comparators that she used were produced in response to her interrogatories. And we think that that's very akin to two cases that have been relied upon in this jurisdiction, Cole versus Lexington Richland School District V, which acknowledged that limiting comparators based on the fact that they're not stated in an amended complaint ignores the importance and purpose of the discovery process. And Randall versus Rolls-Royce Corporation, where Judge Sarah Evans Barker made it a point to address the employer's argument about limiting comparators based on deposition testimony. According to Judge Barker, a plaintiff should be entitled to rely on evidence brought to light during the discovery process to advance her claims and a lack of personal knowledge regarding which mails could be appropriate comparators at the time of the deposition doesn't matter. Were any of the depositions taken of the comparators? No, they were not. Because frankly, Your Honor, I think that the evidence that Kellogg presented was sufficient in terms of what comparators, what their qualifications were, when they were hired, what their salary was. And that would include John Marsh, who prior to working at the academy for the previous 10 years had been the director of a museum at Grissom Air Force Base. And we think that a jury needs to weigh this evidence in terms of not only Williams's discriminatory comment he we feel that the district court erred when it violated the paycheck accrual rule by failing to consider Kellogg's evidence of Williams's discriminatory statement because it wouldn't consider all of her comparator evidence based on the fact of holding her to a heightened pleading standard by saying that she needed to include them in her amended complaint or because of a snippet of deposition testimony where she was interrupted when she started to redirect it back to McSparron's, the comparator that the defense or the appellant wants to focus this case on. And because the court failed to recognize that the district court rather failed to recognize Kellogg's evidence of pretext, that she had ample education or she had ample experience in the education field and that the academy has offered shifting explanations for why it paid her less. They've said salary compression. David Williams has offered two declarations. One says, well, I base compensation on experience and prior salary. After Kellogg pointed out in her response brief that that didn't explain why she was paid less than Males Height around the same time as her, he offered a second declaration highlighting degrees intained and other instructor salaries. It's also important again, your honors, to point out that there is no contemporaneous evidence at all that this is what Williams relied upon. The contemporaneous evidence is what Kellogg testified that he said to her at the exact time that he set her salary. And for these reasons, your honor, we would request that this court reverse the district court's order on both her Title VII and EPA claims. And unless there's any other questions, I can reserve the rest of my time for rebuttal. Thank you, counsel. Mr. Shockley? Good morning. Good morning, counsel. May it please the court. I'm Scott Shockley. I represent Ball State University. The Indiana Academy is a secondary school that is administered by Ball State University. We said in our brief, in our summary of argument, that Judge Baker got it right. And in a sense, Ms. Kellogg in her deposition got it right too, meaning simply that she's the architect of her own complaint. And if you look at the history, she grumbled about pay. A lot of people in teaching grumble about pay, and I understand why. But she didn't believe she was the victim of sex discrimination until she knew what Les McSparin, who was teaching, team teaching with her, the same thing as she was teaching. And when she found out in 2017 what he was paying, a series of events happened very quickly in which she complained to the dean, then she complained to the EEOC, and then this lawsuit started. In her deposition, and this is important because this is how Judge Baker saw the case as framed by the plaintiff herself. And Judge St. Eve, in answer to your question, we did not serve interrogatories on the plaintiff asking for who she deemed her during her deposition. This is at pages 13 and 14 of our brief. And I was examining her, and I asked her if her claim, and I'm paraphrasing somewhat, but it's in docket 49-3, page 19 of her transcript. Is your claim based upon the fact that you believe your pay should have been equal to McSparin's? My claim is we were doing the same job, and we should have been paid equitably. Here's the important question. Is there anyone else, in addition to Les McSparin, whose pay you compared to your own and believed it's evidence of unfair treatment because you are a woman? And anybody else at the academy, I ask. And she said, I was only looking at those that do the same job that I do. Plaintiff's counsel has said in the brief that the district court held her to a heightened pleading standard. That's not what happened here. What Judge Baker did was, based upon our argument that this is what she said in her deposition, he went and looked at her complaint to see if her amended complaint alleged other comparators. Are there any cases that you've found that says a complaint has to identify the comparators? No. That would be a heightened pleading requirement that no circuit has ever imposed. No, I agree. But in isolation, I agree that would be a heightened pleading standard. But the point I was trying to make was here what Judge Baker did, based upon this testimony that she gave, was to look at her complaint and see if she had identified it there. Mr. Shively, the difficulty that I have with your argument, and I appreciate you pointing us to that aspect of the deposition, is why in the world does it make sense to read the plaintiff to answer that question in an employment discrimination case as saying, I was only looking at McSparren and I hereby forfeit all other evidence produced in discovery by the defendant? Well, Your Honor, it's her case. I believe she had been there. The comparison that we'll talk about in a moment, if time permits, are these 2006 men who were hired. The only reason I say that is this just strikes me. I've seen sham affidavit cases, as my colleagues here have, and this is very different than that. This is not an attempt to manipulate the evidentiary record or to walk back a clear statement in deposition, the light was red when the car went through. It's just not that. I just have a hard time reading that answer, your description of it, it's perfectly accurate. But I have a hard time reading it as the plaintiff saying, I forfeit the discovery record. Fair enough. Especially when the information about pay was within your client's control, not the plaintiff's. And that is, if I may, I'd like to talk about that, too. That is the history and purpose of I think, I'm not sure that we explained this as well in our brief as we could have, but I'm informed by Judge Hamilton's opinion in the Poulard, P-O-U-L-L-A-R-D versus McDonald case in 2016 at 829 Fed 3rd 844. These specific, and I'm quoting from the opinion at page 853, these specific type of claims, and he's talking about payroll accrual claims, are where the employer is paying different wages or providing different benefits to similarly situated employees. Furthermore, Poullard could recover up to two years of back pay so long as the unlawful employment practice occurred during the two-year charge filing period is similar to or related to the unlawful compensation practices that occurred outside that period. So, what we're looking at here, if we go back to 2006, are really two different things. One is a field, what the dean called her cohort, and I think Ms. Kellogg referred to it as her cohort as well, three male instructors who were hired at the same time she was. Let's do a comparison to see. Those individuals are not similarly situated. Isn't that an issue? Isn't that a different issue than saying they can't be considered at all? Because that's not what the district court said here. The court didn't say, okay, I'm looking at the facts, drawing all inferences in favor of the plaintiff, and under our law, these three other men who were hired are not similarly situated. What the court did here is say, I'm not going to consider them and even go into that analysis as to whether or not they're similarly situated because of her deposition answer and because she didn't plead that they were comparators. Those are two very different things. I agree. However, I believe it's true that this court may affirm a judgment based on of the details regarding the 2006 male instructors, that cohort. In no way are they similarly situated, Ms. Kellogg. This court could remand it to Judge Baker for further fact finding on that matter, and the decision will still be the same. Briefly, this is at pages 14 and 15 of our brief. John Marsh, there are three gentlemen hired in 2006 along with Ms. Kellogg. John Marsh had 18 years of teaching at Ball State at the university level. The university professorship teaching award twice and a dean citation for meritorious service. That's not comparable to five years of teaching that Ms. Kellogg had at the Northwest Community College in Powell, Wyoming. Dane Kavars had a PhD in astrophysics, a highly desirable factor for anybody, and this is sort of a form of higher education, the university's academy. Jeffrey Sayers is the other male. He had 35 years of teaching experience, three master's degrees, and all but dissertation for his PhD in physics. So, yes, Mr. Cleveland's right. There's this pool, if you want to call it that, of potential comparators in 2006, but that really doesn't get the play of anywhere. And if you, as I understand the Fair Pay Act, that's the analysis that would be appropriate. In other words, she's complaining in 2017 that she is doing equal work to Mr. McSparin, but she's not receiving the same wages. I think our brief illustrates well how much different those two people were when the university hired them. Mr. Shockley, how do you respond to the argument that Mr. Cleveland has advanced on behalf of Ms. Kellogg that this fits, the allegations here and the theory of proof fits within, I think, what he terms the exception or the carve-out in our court's Lauderdale opinion? I don't agree with that. I don't understand that it does. I don't understand that it essentially left room in the future for a case where you could, you know, if there was evidence that there was antecedent sex discrimination that was discovered later, that the ruling in Lauderdale might have been different or in a future case, if that were true, that might have been different. Again, applying this test from McDonald interpreting the Fair Act, that's not what happened here. There was no antecedent discrimination. Well, hold on a second here. Let's suppose that at, if, let's hypothesize that there's a trial and at the trial, I expect, based upon the briefing of the parties here, that you would argue on behalf of the academy that yes, her wages were lower than Mr. McSparin. Of course they were. They were lower because of compression in the market and they were also lower because she started at a lower pay rate. Kind of an interrelated point. Is that fair? Isn't that what your argument would be? My primary argument would be that they are not comparable at all. There's, you know, if one equalizes their salaries, in other words, brings Ms. Kellogg's forward to 2012 when McSparin is hired, there's still a disparity there. The disparity is explained by, as Dr. Williams did in his explanation and Mr. McSparin's CV does, the significantly greater experience McSparin had. Okay, fine. So let's say that's precisely the argument. You make it. You advance it very articulately. Ms. Kellogg would certainly have a chance to respond to it, would she not, as an evidentiary matter? And wouldn't she try to respond to it by saying that the academy's evidence translates to a financial delta between Kellogg and McSparin? That's what they're saying. And that that delta is justified by a meaningful disparity in experience. Why couldn't she come back and say, let's call that delta X? X, but I don't think it's fully X. I think there's something baked in there. And that something baked in there is an ongoing effect of gender-based discrimination from the beginning. Why is that improper? As an evidentiary matter, not as a statute of limitations matter. Now, you may, you may win or, you know, who knows what the jury would do, but why is it an improper evidentiary argument? Well, I mean, there'd have to be evidence to support it. I don't know what that evidence is in this record. Well, I think I didn't. I'm sorry. Go ahead. I'm sorry. I was just going to ask the same thing. What about, I'm sorry, Judge Kainey, go ahead. And I had nothing to say other than say it was alleged that it was because her husband was working. The Williams statement, Your Honor. Yes. All right. Well, I think the Williams, but she's, she'll testify to that, I assume. She already did. I believe she will. The Williams statement is a discreet act. I don't think the of an antecedent act that entitles one to wait 11 or 12 years and on that basis file the claim that she did in this case. But it's directly relevant to the starting salary here. And your affirmative defenses are in part relying on that starting salary. And it seems that you can't come in at a minimum, you can't come in and say as an affirmative defense, well, she's paid lower here because when she started in 2006, her salary started out lower. But say the evidence about Dr. Williams alleged statement can't come in to test that. Well, Williams's statement needs to be remembered in context. And Mr. Cleveland, I don't think addressed this, but it's Ms. Kellogg's own testimony when she says that Williams said she wanted $40,000 and he said, I can't pay you that or I will be paying you as much as my PhDs, which is a gender neutral reason for his decision. And then Ms. Kellogg uses the phrase and then he offhandedly said, your husband works too. But this is at the summary judgment stage. We have to draw all inferences in the light most favorable to Ms. Kellogg. It may be that a jury thinks it was just offhanded, but we can't make that determination. No, I understand and I don't dispute that her testimony is the statement, that the statement was made and therefore at this point, I'm happy to answer any of the questions. You can answer the question if you have anything further to say. I have an answer. May I ask one more question, please? Sure. Mr. Shockley, do you agree that, again, I know it's an allegation and you and Dr. Williams dispute that it was said, but do you agree that Dr. Williams's statement is relevant and would be admissible? No, not to a claim made in 2017. I think that the statute of limitations for her to act upon that began to run at that time as compared to Fair Pay Act claims, like Reese, Mr. Cleveland mentioned, where you don't know when. You may never, I mean, it may take years before you know what your, what colleagues of a different gender are paid. That's the reason why the Fair Pay Act exists, I think. Thank you. Well, let's assume that the, it can come in though, that statement, apart from your objection about the timing. Suppose the jury does hear it based on a legitimate admission of the evidence. What's your answer to Judge Sainee's question then? Well, Your Honor, I understood the question to be, could it come in? So, I mean, if it, I don't think it comes in, but your question is, let's assume it comes in. So, well, let's assume that for that reason that it's not kept out. Same thing. Would it preclude the issuance of summary judgment? If it comes in, can you still win on summary judgment? I believe we can. As we explained in our brief, I don't believe that that is sufficient. It's more in the nature of a stray remark. I don't believe that that alone is sufficient to get by the summary judgment standard, Your Honor. Thank you, Counsel. Thank you. Mr. Cleveland? Yes, thank you. Your Honor, the statute of limitations does not limit testimony that the defendant can offer. She can offer testimony prior to the statute of limitations. The statute of limitations only limits the amount of damages that she can collect. You know, as Mr. Shockley stated in his brief to you all, this would create a bonanza if it were to be allowed, but that's simply not the case. And luckily, this court doesn't have to make that decision because Congress already codified that in the Leadbetter Act, and that decision's already been rendered in the Paycheck Accrual Rule. Those factors were potentially weighed, and we're not talking about collecting damages back to the time that the discriminatory pay decision was made. It's only within the statute of limitations. Mr. Cleveland, do you agree with the statement that I was making that, set aside Lilly Leadbetter and anything about paycheck accrual, my interpretation of the argument that you're advancing from an evidentiary perspective is that she wants to use Dr. Williams' statement to rebut, in part, the evidence that she expects would come from the Academy, and in particular, from the pay that Dr. or Mr. McSparron was making? Absolutely, Your Honor, and we think that this is an issue that would be frankly unfair if Williams is allowed to offer a declaration stating, well, this is why I paid her what I paid. The Academy has forwarded that as an argument to say it's not pay discrimination because I decided based on these factors that we're all outside the statute of limitations, whether it's McSparron's pay or Kellogg, and then conversely say that Kellogg can't use her evidence to, as you say, rebut that statement by Dr. Williams, and so this is sufficient evidence, and it's not the only evidence that she offered, quite frankly. She doesn't rely exclusively on this statement, but I can say unequivocally if that's all the evidence she had, I think that would preclude summary judgment, but that's not all the evidence that she has, and a couple of things. You know, the record is clear. Kellogg perceived this statement to be discriminatory at the time. She was threatened with termination if she continued to complain about it, and so the statement that she didn't perceive this to be pay discrimination until McSparron hired is just not supported by the record. The other thing, Your Honor, that I want to address is that in a light most favorable to Kellogg, she had more than five years teaching experience. I know that's how the Academy wants to frame the argument, and that's what Dr. Williams wants to state in his declaration, but in a light most favorable to Kellogg, she had much more than five years of teaching experience, and I see that my time is up. Thank you, Mr. Cleveland. Thanks to both and the case is taken under advisement.